UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEWARD T. BONTON,<br><br>            Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No.  2:13-cv-0772-KJN<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from April 2, 2008, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (ECF No. 15.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment, and plaintiff subsequently filed a reply brief.  (ECF Nos. 16, 17.)

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c).  (ECF Nos. 8, 11.)

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff was born on May 7, 1961; has a GED; is able to communicate in English; and previously worked as a general laborer.[2]  (Administrative Transcript ("AT") 34-35, 46, 64-65.)  Around June 2008, plaintiff applied for DIB and SSI, alleging that he was unable to work as of April 2, 2008,[3] due to bypass heart surgery, left ear deafness, arthritis, back pain, and high cholesterol.  (AT 28, 67-70, 183.)  On October 9, 2008, the Commissioner determined that plaintiff was not disabled.  (AT 28, 67-68, 78-82.)  Upon plaintiff's request for reconsideration, that determination was affirmed around January 29, 2009.  (AT 28, 69-70, 84-88.)

Subsequently, on March 17, 2009, plaintiff requested a hearing before an administrative law judge ("ALJ").  (AT 91-92.)  However, after a hearing was scheduled for April 9, 2010 (AT 100-05), plaintiff's former counsel on April 2, 2010, filed a request to withdraw the prior hearing request.  (AT 121.)  Consequently, on April 26, 2010, the ALJ dismissed plaintiff's request for hearing, noting that the January 29, 2009 reconsideration determination remained in effect.  (AT 74.)  Thereafter, on May 27, 2010, plaintiff, at that time proceeding without counsel, filed a request for the Appeals Council to review the order of dismissal.  (AT 122.)  Plaintiff explained that "my attorney advised me I did not have a case and to drop my case.  I did not understand I could attend my hearing without an attorney."  (Id.)  Ultimately, on June 24, 2011, the Appeals

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] In contrast to plaintiff's DIB application, which alleged a disability onset date of April 2, 2008, plaintiff's application for SSI actually stated that his alleged disability began on December 1, 2006.  (AT 159, 166.)  Plaintiff's briefing before this court briefly acknowledged the inconsistency (ECF No. 15 at 3), but then proceeded, as did the ALJ, on the premise that the alleged disability onset date is April 2, 2008.  As such, plaintiff has waived any potential argument that he was disabled prior to April 2, 2008, by his failure to substantively address the issue in the opening brief.

1  Council vacated the order of dismissal and remanded the case to the ALJ to provide plaintiff with
2  another opportunity for a hearing.  (AT 75-77.)
3        An administrative hearing was eventually conducted on September 15, 2011, at which
4  plaintiff (proceeding without counsel), plaintiff's mother, and a vocational expert ("VE")
5  testified.  (AT 42-66.)  In a subsequent decision dated September 19, 2011, the ALJ determined
6  that plaintiff had not been under a disability, as defined in the Act, from April 2, 2008, plaintiff's
7  alleged disability onset date, through the date of the ALJ's decision.  (AT 28-36.)  The ALJ's
8  decision became the final decision of the Commissioner when the Appeals Council denied
9  plaintiff's request for review, prepared with the assistance of plaintiff's present counsel, on March
10 27, 2013.  (AT 1-7.)  Thereafter, plaintiff filed this action in federal district court on April 19,
11 2013, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)
12 II.    ISSUES PRESENTED
13       Plaintiff has raised the following issues: (1) whether the ALJ failed to properly develop
14 the record; (2) whether the ALJ improperly discounted the testimony of plaintiff and plaintiff's
15 mother; (3) whether the ALJ's residual functional capacity assessment was not supported by
16 substantial evidence; (4) whether the ALJ erroneously relied on the Grids to find plaintiff not
17 disabled; and (5) whether the evidence presented to the Appeals Council warrants remand.
18 III.    LEGAL STANDARD
19       The court reviews the Commissioner's decision to determine whether (1) it is based on
20 proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record
21 as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial
22 evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340
23 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable
24 mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th
25 Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is
26 responsible for determining credibility, resolving conflicts in medical testimony, and resolving
27 ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The
28 court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[4] As an initial matter, the ALJ found that plaintiff met the insured status requirements of the Act for purposes of DIB through March 31, 2011. (AT 30.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since April 2, 2008, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ determined that plaintiff had the following severe impairments: left ear hearing loss, obesity, coronary artery disease status-post coronary artery bypass surgery in January 2008, degenerative

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

disc disease of the cervical spine, and cocaine use. (AT 31.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The claimant has non-exertional limitations related to left ear hearing loss.

(AT 32-33.) At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (AT 34.) Finally, at step five, the ALJ determined, in reliance on the Grids, that considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 35.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from April 2, 2008, plaintiff's alleged disability onset date, through the date of the ALJ's decision. (AT 35.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. Whether the ALJ failed to properly develop the record

Plaintiff contends that the ALJ failed to fully and fairly develop the record, especially in light of plaintiff's unrepresented status at the time. That argument is unpersuasive.

"The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "When the claimant is unrepresented, . . . the ALJ must be especially diligent in exploring for all the relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, the mere fact that a claimant was unrepresented at the hearing is not a sufficient basis for remand. Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) ("Lack of counsel does not affect the validity of the hearing unless the plaintiff can demonstrate prejudice or

1  unfairness in the administrative proceedings.").

2  In this case, the ALJ carefully explained plaintiff's options regarding representation and
3  offered a postponement of the hearing to provide plaintiff with an opportunity to obtain counsel,
4  but plaintiff instead voluntarily elected to proceed. (AT 45-46.) Moreover, the record does not
5  reveal any prejudice or unfairness in the administrative proceedings. Plaintiff had at least a GED
6  and did not claim to suffer from any mental impairments rendering him unable to understand or
7  participate in the proceedings. Apart from questioning plaintiff, the ALJ permitted plaintiff's
8  mother to testify on plaintiff's behalf, and at the end of the hearing, the ALJ also gave plaintiff an
9  opportunity to add any additional information that plaintiff wanted to bring to the ALJ's attention.
10 (AT 65.) Furthermore, prior to the hearing, the Commissioner appropriately developed the record
11 by requesting medical records from plaintiff's health care providers and ordering a consultative
12 evaluation by a physician who personally examined plaintiff, as well as two evaluations by non-
13 examining state agency physicians. Although plaintiff suggests that these assessments were
14 somewhat dated at the time of the ALJ's decision, the record evidence does not demonstrate that
15 plaintiff's condition significantly changed after these assessments were performed.

16  To the extent that plaintiff claims that the ALJ failed to obtain all of plaintiff's relevant
17 medical records, any such potential error was harmless, because plaintiff's present counsel, who
18 started representing plaintiff at the Appeals Council level, had an adequate opportunity to present
19 additional pertinent records for consideration by the Appeals Council. However, for the reasons
20 discussed below, the court concludes that the records submitted to the Appeals Council would not
21 plausibly have changed the ALJ's prior decision. As such, they were inconsequential to the
22 ultimate non-disability determination. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.
23 1990) (harmless error analysis applicable in judicial review of social security cases).

24  2.  Whether the ALJ improperly discounted the testimony of plaintiff and
25      plaintiff's mother

26  In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of
27 Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:
28 ////

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's subjective allegations. Indeed, in light of plaintiff's obesity and complaints of pain and shortness of breath with exertion, the ALJ assessed a more restrictive RFC than the functional assessments of both the consultative examiner and the state agency physicians. (AT 33-34.) Nevertheless, to

the extent that the ALJ discounted plaintiff's testimony regarding the degree of his symptoms and functional limitations, the ALJ provided specific, clear, and convincing reasons for doing so.

The ALJ found that the record before him did not contain any opinions from treating or examining physicians indicating that the claimant was disabled or had limitations greater than those incorporated into the RFC. (AT 34.) That finding is supported by substantial evidence.

The record before the ALJ did not include a functional assessment from a treating physician. However, on August 27, 2008, plaintiff was evaluated by consultative examiner Dr. Frank Chen, who personally examined plaintiff and reviewed plaintiff's records. (AT 291-93.) Plaintiff's chief complaints were listed as deafness of the left ear, coronary artery disease, chronic low back pain, numbness of the right hand and right foot, and chronic pain in the neck. (AT 291.) Dr. Chen noted plaintiff's bypass surgery in January of 2008, as well as placement of a stent in August of 2008 with improvement of chest pain. (Id.) He observed that plaintiff walked into the examination room without difficulty, sat comfortably during the exam, and that although he had a cane with him, plaintiff was able to walk normally without using it. (AT 291-92.) Upon physical examination, plaintiff's neck was supple, his lungs were clear, and his heart had a regular rate and rhythm with no extra sounds/murmurs or edema. (AT 292.) Plaintiff had normal coordination, station, and gait; normal muscle bulk and tone; normal motor strength in all extremities bilaterally; normal bilateral grip strength; and normal sensation and reflexes in all extremities. (AT 292-93.) A straight leg raising test was negative in the seated and supine positions. (AT 292.) Dr. Chen opined that plaintiff could stand and walk for 6 hours in an eight-hour workday and did not need an assistive device; had no sitting restrictions; and could lift and carry 50 pounds occasionally and 25 pounds frequently, with no further functional limitations on a medical basis. (AT 293.) Because Dr. Chen personally examined plaintiff and made independent clinical findings, his opinion constitutes substantial evidence on which the ALJ was entitled to rely.

Thereafter, on September 30, 2008, and January 27, 2009, the non-examining state agency physicians respectively reviewed plaintiff's records and determined that plaintiff was essentially capable of performing medium work. (AT 306-11, 352-53.) Those assessments were thus largely consistent with Dr. Chen's opinion.

8

Even though the ALJ ultimately gave plaintiff the benefit of the doubt and limited plaintiff to light work, the assessments of the consultative examiner and state agency physicians certainly undermine plaintiff's allegations of disabling functional limitations. Moreover, the assessments are consistent with results from objective testing conducted by plaintiff's treating providers. For example, although the treatment records document plaintiff's complaints of constant chest pain and shortness of breath, related imaging studies revealed largely normal findings. On June 25, 2008, a chest x-ray noted plaintiff's prior coronary artery bypass surgery, but showed no acute findings. (AT 285.) Subsequent December 22, 2008 and May 12, 2009 chest x-rays were likewise normal, also revealing no acute lung disease. (AT 340, 385.) Further cardiac diagnostic studies performed on September 9, 2011, indicated that the mitral valve structures, aortic valve structures, left and right ventricular chamber size, and left atrial chamber size were normal; there was no pericardial effusion; and the ejection fraction was 66%, with only mild mitral and tricuspid regurgitation. (AT 427.) Another study on September 11, 2011, showed normal perfusion with no evidence of stress induced ischemia; global left ventricular ejection fraction within normal limits at 53-57%; and normal wall motion. (AT 426.) Likewise, although plaintiff complained of debilitating back pain, a December 13, 2010 x-ray of the lumbar spine revealed essentially normal findings, and a subsequent June 22, 2011 MRI of the lumbar spine showed only "[m]inor annulus bulging with the lowest 3 lumbar levels without evidence of a significant degree of spinal or foraminal stenosis and without significant progression of any abnormality when compared to [previous MRI of] 06/03/2009." (AT 561, 564.)

To be sure, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). But even though lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

////

In discounting plaintiff's credibility, the ALJ also rationally observed that, apart from the initial bypass surgery in January 2008 (prior to the alleged disability onset date), plaintiff did not receive the type of treatment one would expect for a totally disabled individual. (AT 34.) Indeed, the record reveals that plaintiff on several occasions failed to comply with his treatment regimen, and that some of his own treating physicians expressed doubts about his credibility. See Molina, 674 F.3d at 1113-14 (noting that unexplained or inadequately explained failure to seek or follow a prescribed course of treatment is a proper basis to discount a claimant's credibility, because it casts doubt on the claimant's testimony of disabling pain and functional limitations). On March 6, 2008, plaintiff's treating cardiologist, Dr. Laybon Jones, stated: "He has not been using his incentive spirometer. He has not been walking as much as he should and he is still complaining about just about everything." (AT 249.) Subsequently, on June 4, 2008, Dr. Jones, after an essentially normal physical examination, discharged plaintiff from his practice, explaining: "He has gained 13 pounds. He is not exercising and continuously complains of constant pain….The patient is incompliant." (AT 247.) Furthermore, records from a hospitalization due to chest pain in September 2011 indicated that plaintiff continued to smoke, drink alcohol, and use cocaine and heroin contrary to advice (with a urine toxicology report positive for cocaine and opiates). (AT 420-21, 461, 465-66.) Notably, upon plaintiff's discharge on September 11, 2011, the principal diagnosis was "chest pain likely secondary to cocaine-induced ischemia." (AT 465.)

Additionally, the ALJ pointed to some inconsistency in plaintiff's statements at the hearing: "The claimant said that he experiences shortness of breath if he walks too far; he said "too far" was fifteen feet but then said that he walks two blocks to walk his daughter to school – and one would assume he walks two blocks back to his home." (AT 33, 55, 57.) The inconsistency is plausibly indicative of some exaggeration on plaintiff's part. Although this single, limited inconsistency may not be sufficient by itself to discredit plaintiff, it is consistent with other evidence of potential exaggeration and excessive complaints, such as the notations of treating cardiologist Dr. Jones, discussed above. As such, the ALJ properly considered it as part of the credibility analysis.

////

Finally, the ALJ noted plaintiff's testimony that he last worked full time in 2001 or 2002, and that plaintiff's work history showed only sporadic employment prior to the alleged disability onset date of April 2, 2008, "which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." (AT 33-34, 47.)

In light of the above, the court concludes that the ALJ provided several specific, clear, and convincing reasons for discounting plaintiff's credibility. The record may well contain some contrary evidence that plaintiff could point to in an attempt to bolster his credibility. However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Plaintiff further argues that the ALJ improperly discounted the testimony of plaintiff's mother. "[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Molina, 674 F.3d at 1114 (internal quotation and citation omitted).

Here, the ALJ referenced the testimony of plaintiff's mother, clearly indicating that he had considered the information for purposes of assessing plaintiff's RFC. As discussed above, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony. Several of those reasons (particularly the weight of the medical evidence, plaintiff's failure to comply with his treatment regimen, and plaintiff's work history) are equally germane to the testimony of plaintiff's mother, which largely echoed plaintiff's own testimony. Any error in not explicitly re-stating or linking the reasons given for discounting plaintiff's testimony with respect to discounting plaintiff's mother's testimony was harmless, and remand is not warranted on that

////

basis. See Molina, 674 F.3d at 1115-22; see also Curry, 925 F.2d at 1129.[5]

3. <u>Whether the ALJ's residual functional capacity assessment was not supported by substantial evidence</u>

Plaintiff contends that the ALJ's RFC is not supported by substantial evidence, because plaintiff's testimony that he could walk no more than 15 feet before becoming out of breath is inconsistent with a light work RFC, which involves standing and walking up to 6 hours in an 8-hour workday. However, for the reasons discussed above, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's credibility, and as such, the ALJ was not required to incorporate a 15-feet walking limitation into the RFC.

4. <u>Whether the ALJ erroneously relied on the Grids to find plaintiff not disabled</u>

In addition to limiting plaintiff to light work, the ALJ found that plaintiff had non-exertional limitations related to left ear hearing loss. (AT 32-33.) A June 20, 2008 audiometric evaluation indicated that plaintiff had speech discrimination of 80% at 75 decibels in the right ear and 56% at 100 decibels in the left ear. (AT 268.) Plaintiff contends that the ALJ erroneously relied on the Grids in finding plaintiff not disabled, and instead should have obtained testimony from the VE concerning plaintiff's non-exertional hearing limitation.

The "Grids" take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at various functional levels. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b). "The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids provide for the evaluation of claimants asserting both exertional and non-exertional limitations. But the grids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071,

---

[5] Other evidence in the record further bolsters the ALJ's decision to discount the testimony of plaintiff's mother. Notably, despite claiming to see plaintiff frequently, plaintiff's mother seemed unsure of some of his personal habits. After plaintiff's mother testified that plaintiff's prior job ended because of his frequent smoking, but that the smoking ended when he was going to the doctor, the ALJ asked her whether plaintiff still smoked. (AT 60.) Apparently unsure of the answer, plaintiff's mother then asked plaintiff: "Are you smoking? Are you smoking now?"; to which plaintiff responded: "Yeah, a little, yeah. Not as much." (Id.)

1075 (9th Cir. 2007) (citations and quotation marks omitted).  In such instances, the testimony of a vocational expert is required.  Id.

In this case, the record indicates that plaintiff's hearing limitation would not significantly limit the range of work permitted by plaintiff's exertional limitations.  Plaintiff informed consultative examiner Dr. Chen that he had been deaf in his left ear since birth, but that he was able to hear with a hearing aid.  (AT 291.)  Because plaintiff had previously worked full time as a general laborer despite his hearing impairment (AT 47), it stands to reason that his longstanding hearing impairment would not significantly erode the range of light work plaintiff could perform.  Additionally, the transcript from the administrative hearing also reasonably suggests that plaintiff had minimal, if any, difficulty understanding and responding to the ALJ's questions.  Therefore, remanding for vocational expert testimony is unnecessary.

     5.     <u>Whether the evidence presented to the Appeals Council warrants remand</u>

Finally, plaintiff argues that the Appeals Council erred in denying plaintiff's request to review the ALJ's decision in light of the additional evidence that was submitted to the Appeals Council.  That argument lacks merit.

Technically, federal courts "do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action.  When the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner, and the district court reviews that decision for substantial evidence, based on the record as a whole…."  Brewes v. Comm'r of Soc. Sec., 682 F.3d 1157, 1161-62 (9th Cir. 2012) (internal citations and quotation marks omitted).  However, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  Id. at 1163.  For the additional evidence to potentially affect the analysis as to whether the Commissioner's final decision is supported by substantial evidence, the additional evidence must relate to the period on or before the ALJ's decision.  Id. at 1162.

////

Thus, the court construes plaintiff's argument as contending that the Commissioner's final decision is not supported by substantial evidence in the record as a whole when the Appeals Council evidence is considered along with the other record evidence. Plaintiff specifically points to a functional capacity questionnaire submitted to the Appeals Council, which was completed by nurse practitioner Maricel Fernandez Cabanlit on February 21, 2012, and endorsed by a treating physician, Dr. Arun Anand on April 18, 2012. (AT 565-69.) According to that questionnaire, plaintiff had numerous disabling limitations, including that plaintiff could only sit for 20 minutes at a time; stand for 10 minutes at a time; sit and stand/walk for less than 2 hours total in an 8-hour workday; never lift even less than 10 pounds; rarely twist; never stoop/bend, crouch/squat, or climb ladders or stairs; and would be absent from work more than four days per month. (AT 567-68.) Even though the questionnaire was prepared in 2012, it states that the limitations assessed were present at least as of May 18, 2009, the date on which plaintiff started treatment with Dr. Anand, and the questionnaire thus plausibly relates to the period prior to the ALJ's September 19, 2011 decision.

Nevertheless, remand for further consideration of Dr. Anand's opinion is not warranted, because the opinion is conclusory and minimally supported. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Dr. Anand's form check-box questionnaire contains minimal, if any, clinical findings and rationale for the severe limitations assessed. Furthermore, the questionnaire seems to be based largely on plaintiff's own subjective complaints, which the ALJ properly discounted for the reasons outlined above. For example, in opining that psychological conditions affect plaintiff's pain, Dr. Anand states: "Patient states that his pain made him mad." (AT 566.) In some portions of the questionnaire, it seemed that plaintiff's statements were being directly recorded as answers to the questionnaire. After opining that plaintiff's legs had to be elevated above the heart with prolonged sitting, Dr. Anand indicated in response to a question regarding how often that had to occur: "Patient doesn't know." (AT 567.) Additionally, although the questionnaire stated that plaintiff had pain every day and that it was very hard for him to move around, it also indicated that plaintiff was not on any medication

at that time. (AT 566.) For these reasons, the court concludes that Dr. Anand's opinion was inconsequential to the ultimate non-disability determination, because it is implausible that the ALJ would have given the opinion any significant weight when considered along with the other record evidence.

Because substantial evidence in the record as a whole supports the ALJ's decision, even when the additional Appeals Council evidence is considered, remand is inappropriate.

V. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied.

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: August 12, 2014

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE